

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | CRIMINAL NO. 17-54 |
| v. | * | SECTION: "B" |
| **ROEL RANGEL** | * | |

\* \* \*

## FACTUAL BASIS

Should this matter proceed to trial, the United States will prove the defendant, **Roel RANGEL**, guilty beyond a reasonable doubt of knowingly and intentionally distributing 5 kilograms or more of cocaine hydrochloride, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).  The government would establish the following through credible testimony and the production of reliable evidence:

On Wednesday, March 1, 2017, at approximately 2:19 a.m., a deputy from the St. Tammany Parish Sheriff's Office ("STPSO") conducted a traffic stop on a small black Nissan Versa sedan, eastbound on Interstate 12, in Slidell, Louisiana.  The vehicle veered across the white line and into the exit/turning lane of traffic, occupying two lanes of traffic, so the deputy conducted a traffic stop at this time.  The driver, **RANGEL**, provided a Texas driver's license bearing the name of **Roel RANGEL**, and a rental agreement for the vehicle, in the name of a third party.  The rental agreement had expired two days earlier, so the deputy asked **RANGEL** to exit his vehicle and move towards the rear of his vehicle while the deputy checked the status of the vehicle.  As **RANGEL** exited the vehicle, the deputy saw a small plastic bag,

AUSA
Defendant
Defense Counsel

2

contained in a partially opened small piece of tin foil, fall from the lap of **RANGEL**, which the deputy recognized as consistent with narcotics packaging.  **RANGEL** provided the deputy verbal consent to search the vehicle.   The deputy was able to view the tin foil object more closely, and saw that it contained white powder.  The deputy read **RANGEL** his *Miranda* rights, which he waived voluntarily.  **RANGEL** reaffirmed that the deputy had consent to search the vehicle.   The deputy then located a large black duffle bag, in the back seat, that contained twenty-five individually-wrapped packages, each of which contained a white powdery substance that field tested positive for the presence of cocaine.   The total net weight of the twenty-five packages was 28.02 kilograms.

STPSO narcotics detectives conducted an interview with **RANGEL**.  **RANGEL** stated that he was delivering the cocaine to Alabaster, Alabama for Kevin Torres DECUIR.  **RANGEL** stated that DECUIR gave him the narcotics at a restaurant in Houston, Texas the previous evening.  DECUIR instructed **RANGEL** to transport the narcotics from Houston, Texas, to Alabaster, Alabama.  **RANGEL** was to be paid $10,000 for transporting the packages.   During the interview, **RANGEL** began receiving phone calls from DECUIR.  **RANGEL** agreed to assist law enforcement in a controlled delivery to DECUIR.  In the presence of law enforcement officers, **RANGEL** arranged by phone to meet with DECUIR in Alabama.

While en route to Alabama, DECUIR, made contact with **RANGEL** several times through text messages and phone calls, which were recorded and consensually monitored.  **RANGEL** and DECUIR agreed to meet the Flying J truck stop, in McCalla, Alabama, near Exit 104 on Interstate 20.  DECUIR informed **RANGEL** that DECUIR was getting a hotel room to sleep, and that **RANGEL** should call DECUIR once **RANGEL** was in the area.  **RANGEL** told law enforcement officers that he was "friends"



AUSA _____
Defendant _____
Defense Counsel _____

3

with DECUIR on Facebook, and **RANGEL** identified DECUIR through photographs on Facebook in the presence of law enforcement officers. Before any delivery of the narcotics was attempted, law enforcement officers searched hotels near the location of the controlled delivery, in search of vehicles with Texas license plates.

At approximately 11:55 a.m., **RANGEL** arrived, under surveillance of law enforcement, to the Flying J in McCalla, Alabama. **RANGEL** made a phone call to DECUIR. DECUIR answered and stated that he would be there in 10 minutes. At approximately 12:05 p.m., officers saw a Red 2007 Toyota Prius, with a Texas temporary tag, circling the parking lot of the Flying J. The surveillance team had seen this vehicle shortly beforehand, at the Quality Inn, one of the nearby hotels. At this time, **RANGEL** exited his vehicle, retrieved the black duffle bag, placed the duffle bag in the back seat of the Prius, and entered the passenger side of the Pruis. Law enforcement then conducted the arrests of both passengers in the vehicle, **RANGEL** and Victor ESQUIVEL. Before any questions were asked of ESQUIVEL, he stated spontaneously that the person that the officers were looking for was at the hotel. Several officers immediately responded to the Quality Inn, where the Prius had been parked, and observed a Hispanic male exiting room 410, who attempted to flee upon observing the officers. Officers apprehended the individual after a short pursuit and identified the individual as Kevin DECUIR.

The government and defendant agree and stipulate that for sentencing purposes the government could prove that the amount of drugs that was distributed by **RANGEL** included a total of at least 15 kilograms of a mixture or substance containing a detectible amount of cocaine hydrochloride.

At trial the government would introduce the cocaine that **RANGEL** possessed on March 1, 2017, lab reports concerning the cocaine, recordings of conversations between **RANGEL** and DECUIR, audio



AUSA
Defendant
Defense Counsel

4

and video recordings of the controlled delivery on March 1, 2017, involving **RANGEL** and ESQUIVEL, testimony of the investigating agents and forensic chemist, and the statements of **RANGEL** and other witnesses.

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **RANGEL** or the government, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea.  The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for **RANGEL** plea of guilty to the charged offense in Count 1, and to stipulate that acts in furtherance of the conspiracy took place within the Eastern District of Louisiana.

READ AND APPROVED:

_____  5/3/17
Nicholas D. Moses                          DATE
Assistant United States Attorney

_____  5/3/17
Jerrod Thompson-Hicks.                 DATE
Counsel for Defendant Roel Rangel

_____  5/3/17
Roel Rangel                                     DATE
Defendant

AUSA ____
Defendant ____
Defense Counsel ____